Alejandro P. Gutierrez, SBN 107688
**2100 Hillcrest Drive**
**Ventura, CA 93001**
**Alex@apgutierrezlaw.com**
**Tel: (805) 477-8373**

Brent Rosenzweig (SBN 219071)
*Brent@LandRlegal.com*
Jong Lee (SBN 219810)
*Jong@LandRlegal.com*
LEE & ROSENZWEIG
3580 Wilshire Blvd, Fl. 17
Los Angeles, CA 90010
Tel: (213) 221-4502

Attorneys for Plaintiff
ESME MUNOZ and the Settlement Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESME MUNOZ, an individual and on behalf of all similarly situated individuals, | CASE NO:   2-22-cv-02294- MAA (Hon. Maria A. Audero) |
| Plaintiff, | CLASS ACTION |
| vs. | **REVISED NOTICE OF MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; DECLARATIONS OF ALEJANDRO P. GUTIERREZ; BRENT ROSENZWEIG; JONG LEE AND ESME MUNOZ; [REVISED PROPOSED] ORDER** |
| EVENT MEDIC NY INC, JEFF SAPERSTEIN, an individual; and DOES 1-100 inclusive, | |
| Defendants. | **Date:** |
| | **Time: 9:00 a.m.** |
| _____ | **Courtroom 880** |
| – | **Hon. Maria A. Audero** |

PLEASE TAKE NOTICE that on, 2024, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Maria A. Audero, at the Roybal Federal Building and United States Courthouse, 255 E. Temple St., Los Angeles, CA 90012, Courtroom 880, 8th Floor Los Angeles, CA 90012, Plaintiff Esme Munoz ("Plaintiff" or "Munoz") will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 23 for an Order:

1.    Granting preliminary approval of the proposed settlement upon the terms and conditions set forth in the Settlement and Release Agreement (hereinafter referred to as the "Settlement" or "Agreement") that was initially executed in March of 2024 and an amended Agreement was signed in June 2024;

2.    Preliminarily certifying, for settlement purposes only, a settlement class in this matter that is comprised of:

> All independent contractors who worked as EMTs or Covid-19 Screeners of Defendants employed in California at any time during the Class Period.

3.    Approving the proposed manner of mailing of the Notice of Settlement set forth in the Settlement and the size and contents of the Notice of Proposed Class Action Settlement;

4.    Appointing and approving CPT Group to administer the settlement payment procedures required by the Settlement ("Claims Administrator") and preliminarily approving the settlement administration costs;

5.    Preliminarily appointing, for settlement purposes only, as Class Counsel: Alejandro P. Gutierrez, Esq.; Brent Rosenzweig and Jong Lee of Lee & Rosenzweig.

6.    Preliminarily appointing, for settlement purposes only, Plaintiff Esme Munoz as the Class and PAGA representative of the proposed settlement class herein;

7.    Provisionally approving the resolution of the operative claims and finding that the terms of the Settlement are sufficient to warrant sending of notice to the settlement class members that are preliminarily certified for settlement purposes;

8.    Approving the Notice of Proposed Class Settlement and Final Settlement Approval Hearing (the "Notice of Class Settlement"), attached to the Settlement as Exhibit "1";

9.      Authorizing the mailing of the Notice of Class Settlement and accompanying forms to the settlement class members;

10.      Approving the settlement of the PAGA claims in the Action and the proposed PAGA penalties in the Settlement, including the payments to the LWDA and the aggrieved employees under California Labor Code section 2699(5)(l)(2); and

11.      Scheduling a hearing (the "Final Settlement Approval Hearing"), at which time the Court shall fully and finally approve the reasonableness of the Settlement, enter final judgment on the Action, and permanently enjoin all settlement class members who have not timely opted out from the Settlement from pursuing or seeking to reopen claims that are in any way related to those asserted in the Action (collectively, "Final Approval," to be memorialized in the "Final Approval Order").

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 26, 2024. This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declarations of Alejandro P. Gutierrez, Brent Rosenzweig, Jong Lee, and Esme Munoz, filed concurrently herewith, all supporting exhibits filed herewith, all other pleadings and papers filed in this action, and any argument or evidence that may be presented at the hearing in this matter.

Dated:  July 2, 2024

By _____
        *Alejandro P. Gutierrez*
        Alejandro P. Gutierrez
        Attorneys for Esme Munoz and Settlement Class

# **TABLE OF CONTENTS**

I.  Introduction .................................................................................................... 1

II.  Factual and Procedural Background ............................................................... 1

III.  Investigation and Discovery .......................................................................... 4

IV.  Summary of the Proposed Settlement ........................................................... 4

   A.  Settlement Terms .................................................................................. 5

      1.  Gross Settlement Amount ............................................................ 5

      2.  Net Settlement Amount & Payment Terms ................................. 5

      3.  Distribution of Net Settlement Amount ...................................... 6

      4.  Release by Participating Class Members .................................... 6

      5.  Release by Aggrieved Employees ............................................... 7

      6.  Administration Expenses ............................................................. 8

   B.  Settlement Value .................................................................................. 9

V.  The Settlement Meets and Exceeds the Standards for Preliminary Approval .... 11

   A.  Certification of the Class for Settlement Purposes is Appropriate .............. 12

      1.  The Settlement Class is Sufficiently Numerous ........................ 12

      2.  Questions of Law of Fact Are Common to the Class ................ 13

      3.  The Class Representative's Claims are Typical of the Class ..... 13

      4.  The Class Representative and Her Counsel Will Fairly and Adequately Protect the Settlement Class Members' Interests .................... 14

      5.  Class Counsel Will Fairly and Adequately Protect Class Members ...... 14

      6.  Common Questions of Law and Fact Predominate ................... 15

      7.  A Class Action is Superior to Alternative Methods .................. 15

   B.  The Court Should Preliminarily Approve the Settlement ................... 15

      1.  Extent of Discovery and State of the Proceedings .................... 16

      2.  Amount Offered in Settlement ................................................... 17

      3.  Strengths and Risks, Expense, Complexity, and Likely Duration of Litigation ............................................................. 17

i

4. Experience and Views of Counsel ........................................................... 18

5. Arms-Length Negotiations; No Collusion Between the Parties ............ 18

6. The Settlement Treats All Class Members Equitably ............................. 20

7. Other Factors ........................................................................................... 20

C. The Proposed Class Notice Should Be Approved ........................................ 20

D. The Court Should Appoint CPT Group as Claims Administrator ............... 21

E. Plaintiff Requests Approval of PAGA Settlement ....................................... 21

F. Proposed Schedule for Remaining Procedures ............................................ 23

VI. Conclusion ................................................................................................................. 24

**REVISED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1

<u>**Table of Authorities**</u>

2

**Cases**

3

4

*Acosta v. Trans Union, LLC*
243 F.R.D. 377 (C.D. Cal. 2007) ................................................................................ 16

5

6

*Amchem Prods. Inc. v.* Winsor
521 U.S. 591 (1997) .........................................................................................12, 15

7

8

*Bellinghausen v. Tractor Supply Company*
306 F.R.D. 246 (N.D.Cal. 2015) ............................................................................... 17

9

10

*Brown v. Ralph's Grocery Co.*
197 Cal. App. 4th 489 (2011) .................................................................................... 22

11

12

*Casas v. Victoria's Secret Stores*
No. 2:14-cv-06412-GW (Nov. 21, 2017) .................................................................. 10

13

14

*Churchill Vill., LLC v. Gen. Elec.*
361 F.3d 566 (9th Cir. 2004) ..................................................................................... 21

15

16

*Class Plaintiffs v. Seattle*
955 F.2d 1268 (9th Cir. 1992) ............................................................................ 11, 16

17

18

*Cunningham v. Leslie's Poolmart, Inc.*
2013 WL 3233211 (C.D. Cal. June 25, 2013) .................................................... 23

19

20

*Dunk v. Foot Locker Retail, Inc.*
48 Cal.App.4th 1794 (1996) ....................................................................................... 4

21

22

*Eisen v. Carlisle & Jacquelin*
417 U.S. 156 (1974) .............................................................................................20, 21

23

24

*Franco v. Rut Food Prods., Inc.*
2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .......................................................... 23

25

26

*Garcia v. Gordon Trucking*
2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) .......................................................... 23

27

28

*Gatreaux v. Pierce*
690 F.2d 616 (7th Cir. 1982) ..................................................................................... 11

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ........................................................ 11, 13, 15, 16, 22

*Harik v. Cal. Teachers Ass'n*
    326 F.3d 1042 (9th Cir. 2003) ....................................................................... 12

*Hendricks v. Starkist Co.*
    2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ...................................................... 19

*Hopson v. Hanesbrands Inc.*
    2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009) ................................................. 23

*In re LenovoAdware Litig.*
    2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ...................................................... 19

*In re Lidoderm Antitrust Litig.*
    2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ...................................................... 18

*In re Mego Fin, Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000) ..................................................................... 16, 17

*In re Tableware Antitrust Litig.*
    484 F.Supp.2d 1078 (N.D. Cal. 2007) ............................................................... 1

*In re Volkswagen Litigation*
    2016 WL 4010049 (N.D.Cal. June 26, 2016) ....................................................... 10

*Jensen v. SECORP Indus.*
    2018 WL 5961287 (C.D. Cal. Aug. 23, 2018) ..................................................... 12, 13

*Joel A. v. Giuliani*
    218 F.3d 132 (2nd Cir. 2000) ..................................................................... 11

*Kullar v. Foot Locker Retail, Inc.*
    168 Cal.App.4th 116 (2008) ........................................................................ 4

*Litty v. Merrill Lynch & Co.*
    2015 WL 4698475 (C.D. Cal. Apr. 27, 2015) ..................................................... 16, 18

*Mathein v. Pier 1 Imports (U.S.), Inc.*
    2018 WL 1993727 (E.D. Cal. Apr. 27, 2018) ...................................................... 10

REVISED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

*Nat'l Rural Telecommunications Cooperative v. Directv, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................... 12, 18

*Nordstrom Commission Cases*
    186 Cal. App. 4th 576 (2010) ............................................................. 23

*O'Connor v. Uber Techs.*
    201 F. Supp. 3d. 1110 (N.D. Cal. 2016).............................................. 22

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*
    688 F.2d 615 (C.D. Cal. 1982) ............................................................ 11

*Rodriguez v. Hayes*
    591 F.3d 1105 (9th Cir. 2010) ............................................................. 13

*Rodriguez v. West Pub. Corp.*
    563 F.3d 948 (9th Cir. 2009) .........................................................10, 19

*Rutti v. Lojack Corp.*
    2012 WL 3151077 (C.D. Cal. July 31, 2012) ...................................... 15

*Sakkab v. Luxottica Retail N. Am. Inc.*
    803 F.3d 425 (9th Cir. 2015) ............................................................... 21

*Villalobos v. Calandri Sonrise Farm LP*
    2015 WL 12732709 (C.D. Cal. July 22, 2015)..................................... 22

*Weeks v. Google LLC*
    2019 WL 8135563 (N.D. Cal. Dec. 13, 2019) ................................ 18, 19

**Statutes**

Bus. & Prof. Code § 17200 et seq. .........................................................2, 7

Fed. R. Civ. P. 23 ............................................................................... *passim*

Labor Code § 201 ................................................................................... 2, 7

Labor Code § 202 ................................................................................... 2, 7

Labor Code § 226 ................................................................................... 2, 7

Labor Code § 226.7 ................................................................................ 2, 7

Labor Code § 510 ................................................................................................ 2, 7

Labor Code § 512 ................................................................................................ 2, 7

Labor Code § 558 ............................................................................................. 2, 7, 8

Labor Code § 1182.12 ....................................................................................... 2, 7, 8

Labor Code § 1194 ............................................................................................. 2, 8

Labor Code § 1197 ............................................................................................. 7, 8

Labor Code § 1198 et seq. .................................................................................. 7, 8

Labor Code § 2699 ............................................................................................. 2, 22

**Other Authorities**

*Manual for Complex Litigation*, Fourth, § 21.632 (2004) .................................... 11, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Esme Munoz moves this Court for an order preliminarily approving an unopposed Class Action and PAGA Settlement and Release Agreement (hereinafter referred to as the "Settlement" or "Agreement") entered into by Plaintiff Esme Munoz ("Plaintiff") and Defendants Event Medic, Inc. ("Event Medic") and Jeff Saperstein ("Saperstein") (collectively "Defendants") and third-party Defendant Capri Holdings Limited ("Capri"). A true and correct copy of the Settlement Agreement (and related exhibits) is attached as Exhibit A.

Pursuant to the Settlement Agreement, and in exchange for the Releases described in the Agreement, Defendants have agreed, subject to Court approval, to pay the Gross Settlement Amount of $500,000. (Settlement, at ¶ 1.22, ¶ 3.1). The Gross Settlement Amount includes Individual Class Payments, Individual PAGA Payments, the LWDA PAGA Payment, Class Counsel Fees, Class Counsel Litigation Expenses payment, Class Representative Service Payment, and the Administrator's Expenses.

As discussed below, the proposed Settlement resolves hard-fought litigation and readily satisfies the standard for preliminary approval. The Settlement is within the range of possible approval to justify sending notice to Settlement Class members and scheduling final approval proceedings. *See In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). Accordingly, Plaintiff Munoz seeks an order granting preliminary approval as set forth herein.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This action challenges the policy and practice of Defendant Event Medic NY Inc. of misclassifying EMTs and Covid Screeners as independent contractors rather than employees under California law. The lawsuit alleges that stemming from such misclassification Event Medic owes Plaintiff Esme Munoz and the class unpaid wages, interest, and penalties. The lawsuit also asserts that Event Medic failed to provide accurate pay statements in compliance with California law and failed to reimburse workers for work-related expenses.

Defendant Event Medic represents itself as a nationwide provider of professional and experienced Emergency Care Physicians, Paramedics, EMT's, Nurses and Water Safety Personal. Munoz and members of the putative class allege they are/were individuals who provided onsite medical coverage and were expected to follow Event Medics' directions in the performance of their jobs.

On March 1, 2022, Plaintiff commenced this Action by filing a Complaint with the Los Angeles Superior Court. Thereafter, the case was removed to the Central District Court, where it presently resides. The Complaint is the operative complaint (the "Operative Complaint") and alleges causes of action against Defendants for: (1) Failure to Pay Overtime Wages (Class Claim; Cal. Labor Code §§ 510 and 1198 et seq.); (2) Failure to Pay Minimum Wage (Class Claim; Cal. Lab. Code §§ 1182.12, 1194, 1197 & 1198, et seq.); (3) Failure to Pay Meal Period Compensation (Class Claim; Cal. Lab. Code §§ 226.7, 512(a) & 1198 et seq.); (4) Failure to Pay Rest Period Compensation (Class Claim; Cal. Lab. Code §§ 226.7 & 1198 et seq.); (5) Failure to Furnish Accurate Wage and Hour Statements (Class Claim; Cal. Lab. Code § 226); (6) Failure to Pay Wages Upon Discharge (Class Claim; Cal. Lab. Code §§ 201 & 202, et seq.); (7) Unfair Competition (Class Claim; Business and Professions Code § 17200 et seq.); and (9) Violation of Private Attorney General Act. Defendant Event Medic denies the allegations in the Operative Complaint and denies any failure to comply with the laws identified in the Operative Complaint. Saperstein denies being the employer of the Class, and he denies any Labor Code 558 claims, and Defendants deny any and all liability for the causes of action alleged.

Pursuant to Labor Code section 2699.3, subd. (a), Plaintiff gave timely written notice to Defendants and the LWDA by sending the PAGA Notice. As of the filing of this Motion, Plaintiff has received no response from the LWDA.

On or about February 23, 2023, Defendants filed a Third-Party Complaint against Capri Holdings Limited in the Central District Court, which became a part of this Action. The Third-Party Complaint alleges causes of action against Capri for: (1) Contribution and (2) Indemnification. Capri denies all of the allegations in the Third- Party Complaint

1    and all liability for the causes of action alleged.

2         On April 13, 2023, the Parties participated in a settlement conference before the

3    Honorable Maria A. Audero. The matter did not settle, but the parties agreed to resume

4    settlement discussions after an informal exchange of information. A second settlement

5    conference occurred on July 12, 2023, before the Honorable Steven Kim. The matter was

6    still not resolved, and the parties were ordered to continue settlement discussions. On

7    December 8, 2023, the Honorable Magistrate Judge Karen E. Scott held a Settlement

8    Conference. The settlement conference was adjourned with a mediator's proposal. The

9    case did not settle and the parties thereafter followed up discussions regarding settlement.

10   At the end of December 2023, the parties reached a tentative settlement of the action, and

11   Defendants' counsel drafted a Settlement Agreement in February 2024.

12        The Class consists of all individuals who were classified as independent contractors

13   who worked as EMTs or Covid-19 Screeners of Defendants employed in California at any

14   time during the Class Period (e.g., from March 1, 2018, to the date this Court preliminarily

15   approves the settlement). Based on a review of its records as of the date of the December

16   2023 Settlement Conference, Defendants estimate there are 4,600 workweeks worked by

17   Class Members during the Class Period. For purposes of PAGA penalties only, the

18   relevant period is from November 9, 2020 to the present, which includes an estimated 155

19   workers who have worked approximately 1,900 weekly pay periods through the

20   Settlement date. As of the Settlement date, there are approximately 373 putative class

21   members, 325 putative class members with alleged meal/hourly damages, and 155

22   putative PAGA aggrieved employees.

23        The PAGA aggrieved employees are or previously were employed by Defendant

24   Event Medic NY Inc. in California and were classified as independent contractors at any

25   time during the Class and PAGA period. (See Settlement, § I. Definition, ¶¶ 1.4).

26        Prior to settlement, Plaintiff obtained, through informal discovery, copies of written

27   company policies and employee time and pay records to analyze and obtained substantial

28   financial records pertaining to Defendants financial situation. Plaintiff's investigation was

sufficient to satisfy the criteria for court approval set forth in *Dunk v. Foot Locker Retail, Inc.* (1996) 48 Cal.App.4th 1794, 1801 and *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129-130 ("*Dunk/Kullar*").

The Court has not granted class certification. The parties, Class Counsel, Defense Counsel, and Third-Party (Capri) Defense Counsel, represent that they are not aware of any other pending matter or action asserting claims that will be extinguished or affected by the Settlement.

## III.    INVESTIGATION AND DISCOVERY

Written discovery was conducted in this federal action, relating to the operative claims and class certification issues, and substantial discovery was made related to Defendants' financial information.  (Gutierrez Decl., ¶ 11).  The breadth of discovery allowed both parties to explore the merits of the claims, Defendants' potential exposure, and defenses, as well as the collectability of any judgment obtained in this Action.

## IV.    SUMMARY OF THE PROPOSED SETTLEMENT

The proposed Settlement Agreement resolves the class and PAGA claims alleged in this action (Plaintiff's complaint was filed in state court on March 1, 2022). The Settlement Agreement, attached hereto as Exhibit A, is summarized as follows.

The Settlement proposes a settlement class for Rule 23 certification and approval in this matter that is comprised of:

> All independent contractors who worked as EMTs or Covid-19 Screeners of Defendants employed in California at any time during the Class Period.

(Settlement, at ¶ 1.5).

As of the date of the Settlement Agreement, there were approximately 4,600 workweeks worked by Class Members during the Class Period. For purposes of PAGA penalties only, the relevant period is from November 9, 2020, to the date of preliminary approval of the Settlement, which includes an estimated 155 workers who have worked approximately 1,900 weekly pay periods during the Class Period. (Gutierrez Decl. at ¶ 14).

Defendants agree to the certification of the class of Settlement Class Members for settlement purposes only. (Settlement at ¶ 13.1) (Gutierrez Decl., ¶ 14).

The Settlement also involves the resolution of Munoz's claims for civil penalties under PAGA, which will entail the payment of PAGA penalties to the State of California as well as those aggrieved employees covered by the Settlement. PAGA penalties in the amount of $40,000.00 will be paid from the Gross Settlement Amount, with 75% ($30,000.00) allocated to the LWDA PAGA Payment and 25% ($10,000.00) allocated to the Individual PAGA Payments. (Settlement at ¶¶ 3.2.5) (Gutierrez Decl., ¶ 15).

A. **Settlement terms.**

1. <u>**Gross Settlement Amount**</u>

In exchange for the releases given by the Participating Settlement Class Members, as described in the Agreement and subject to court approval, Defendants have agreed to pay the Gross Settlement Amount of $500,000.00. (Five Hundred Thousand Dollars). (Settlement, at ¶¶ 1.22, 3.1).    The Gross Settlement Amount includes: (1) Class Representative Service Payment to Class Representative not to exceed  $15,000.00; (2) Class Counsel Fees not to exceed one-third (1/3) of the Gross Settlement Amount, namely $166,500.00; (3) Class Counsel litigation expenses payment incurred to prosecute the action not to exceed $15,000.00; (4) PAGA Penalties in the total amount of $40,000.00, allocated 25% to the Aggrieved Employees ($10,000.00) and 75% to the LWDA ($30,000.00); and (5) reasonable Administrator expenses in the amount of $10,500.00. (Settlement, at ¶¶ 1.22; 3.1).

Third-Party Defendant Capri will pay the sum of $20,000.00 directly to Defendants within ten business days after the Settlement is final. (Settlement, ¶ 3.3).

The Gross Settlement Amount is non-reversionary. (*Id.*, ¶ 3.1). Any reductions to the attorneys' fees, costs, or service payment sought will increase the funds available for distribution to the Munoz and the Participating Settlement Class Members. (*Id.*).

2. <u>**Net Settlement Amount & Payment Terms**</u>

The Net Settlement Amount to be distributed to Munoz and the Participating Settlement Class ("Net Settlement Amount") is the amount remaining following deductions of the Court-

approved attorneys' fees and costs, class representative service payment, PAGA allocation, and settlement administration costs from the Gross Settlement Amount. (Settlement, ¶ 1.28).

Defendants shall fully fund the Gross Settlement Amount and also fund the amounts necessary to fully pay Defendants' share of payroll taxes by transmitting the funds to the Administrator as follows: The first installment of $166,666.00, together with the pro-rated employer payroll taxes payment shall be made fourteen (14) days after a judgment is no longer subject to appeal; the second installment of $166,666.00, together with the pro-rated employer payroll taxes payment, shall be paid six months after the first installment; and the last and final payment of $166,668.00, together with the pro-rated employer payroll taxes payment, will be paid six months following the second installment.

### 3. Distribution of Net Settlement Amount

Subject to this Court's approval, the Net Settlement Amount will be apportioned to the Participating Settlement Class Members as follows:

- Participating Class Member's pro rata share of the Net Settlement Amount will be calculated according to the number of Workweeks worked during the Class period. (Settlement, ¶ 1.23).
- The Aggrieved Employee's pro rata share of PAGA penalties (25%) is calculated according to the number of Pay Periods worked during the PAGA period. (Settlement, ¶ 1.24)

### 4. Release by Participating Class Members

The parties to be released are Defendants Event Medic NY, Inc., their directors, officers, and employees; Defendant Jeff Saperstein, Third-Party Defendant Capri Holdings Limited and its parents, subsidiaries, affiliates, directors, officers, and employees. (Settlement, at ¶ 1.4.1; ¶ 6). Accordingly, the class release for the Participating Settlement Class Members releases the following claims:

All Participating Class Members, on behalf of themselves and their respective former and present representatives, and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, release Released

Parties from (i) all claims that were alleged, or reasonably could have been alleged, based on the Class Period facts stated in the Operative Complaint and ascertained in the course of the Action, including, any and all claims premised on failure to pay overtime wages; failure to pay regular wages; failure to pay minimum wages; off-the-clock work; failure to provide meal periods and rest breaks or additional pay in lieu thereof; failure to provide and maintain complete and accurate itemized wage statements that included all information required by the California Labor Code; failure to keep accurate time records; failure to provide employees with rates of pay and overtime rates applicable to their employment, including failure to properly calculate the overtime rate (regular rate of pay); failure to reimburse employees for costs incurred in furtherance of work duties; untimely payment of wages; violations of California Labor Code §§ 201-204, 206, 210, 216, 218.5, 218.6, 221, 226, 226.3, 226.7, 226.8, 227.3, 248.5, 256, 432.5, 450, 510, 512, 558, 1174, 1174.5, 1182.12, 1194, 1197, 1197.1, 1198, 1199, 2802, and 2698, et seq.; related violations of the applicable California Wage Orders; violations of all related or corresponding federal laws; and violation of California Business and Professions Code section 17200, et seq. Except as set forth in Section 6.3 of this Agreement, Participating Class Members do not release any other claims, including claims for vested benefits, wrongful termination, violation of the Fair Employment and Housing Act, unemployment insurance, disability, social security, workers' compensation, or claims based on facts occurring outside the Class Period. (Settlement, ¶ 6.2).

## 5. **Release by Aggrieved Employees**

All Aggrieved Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, the Released Parties from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the PAGA Period facts stated in the Operative Complaint, and the PAGA Notice, and ascertained in the course of the Action, claims premised on failure to pay overtime wages; failure to pay regular wages; failure to pay minimum wages; off-the-clock work; failure to provide meal periods and rest breaks or additional pay in lieu thereof; failure to provide and maintain complete and accurate itemized wage statements that included all information required by the California Labor Code; failure to keep accurate time records; failure to provide employees with rates of pay and overtime rates applicable to their employment, including failure to properly calculate the overtime rate (regular rate of pay); failure to reimburse employees for costs incurred in furtherance of work duties; untimely payment of wages; violations of California Labor Code §§ 201-204, 206,

210, 216, 218.5, 218.6, 221, 226, 226.3, 226.7, 226.8, 227.3, 248.5, 256, 432.5, 450, 510, 512, 558, 1174, 1174.5, 1182.12, 1194, 1197, 1197.1, 1198, 1199, 2802, and 2698, et seq.; and related violations of the applicable California Wage Orders.

(Settlement, ¶ 6.3).

Class Members who worked during the PAGA Period and who opt out of the class settlement will still be considered Aggrieved Employees and, therefore, will (1) receive their portion of the PAGA settlement payment and (2) release all PAGA Released Claims. (Settlement, ¶ 6.4).

**6.  Administration Expenses**

The parties have selected CPT Group as the Claims Administrator. CPT Group has provided a quote of $10,500.00 for its administration expenses. (Gutierrez Decl. at ¶ 42). The parties have also agreed on a Notice of Settlement form to be mailed to the Class, which is attached to the Settlement as Exhibit "1." The Notice of Settlement informs the class members of the essential terms of the Settlement and their right to object thereto.

The Administrator will issue checks for the Individual Class Payments and/or Individual PAGA Payments and send them to the Class Members via First Class U.S. Mail, postage prepaid.  The face of each check shall prominently state the date (not less than 180 calendar days after the date of mailing) when the check will be voided.  The Administrator will cancel all checks not cashed by the void date.  The Administrator will send checks for Individual Class Payments to all Participating Class Members (including those for whom Class Notice was returned undelivered).  The Administrator will send checks for Individual PAGA Payments to all Aggrieved Employees, including Non-Participating Class Members who qualify as Aggrieved Employees (including those for whom Class Notice was returned undelivered).  The Administrator may send Participating Class Members a single check combining the Individual Class Payment and the Individual PAGA Payment.  Before mailing any checks, the Settlement Administrator must update the recipients' mailing addresses using the National Change of Address Database. (Settlement, ¶ 4.4.1).

The Administrator will conduct a Class Member Address Search for all other Class Members whose checks are returned undelivered without USPS forwarding address. Within seven (7) calendar days of receiving a returned check, the Administrator must re-mail checks to the USPS forwarding address provided or to an address ascertained through the Class Member Address Search. The Administrator need not take further steps to deliver checks to Class Members whose re-mailed checks are returned as undelivered. The Administrator shall promptly send a replacement check to any Class Member whose original check was lost or misplaced, as requested by the Class Member prior to the void date. (Settlement, ¶¶ 4.4.2).

**B. Settlement value.**

The Settlement represents a compromise between the positions and evaluations of the two sides to this controversy. There were significant disagreements between the parties as to the facts, the law, and the application of both to Defendant's business model. As an example, the parties disagreed substantially on whether Event Medic properly classified the Class Members as exempt from California overtime pay pursuant to one or more of the claimed exemptions– namely, that Event Medic was not Plaintiff's and putative class members' employer, and if misclassified as independent contractors, rather than employees, Plaintiff's and putative class members' employer, Plaintiff and putative class members were nevertheless workers exempt from overtime compensation. In addition, Defendants alleged that Plaintiff and members of the class were provided statutory meal and rest breaks. (Gutierrez Decl., ¶ 18). Further, Plaintiff's counsels believed claims for non-compliant meal and rest breaks to have a potentially lesser chance of being certified, in part due to the potential individualized issues relating to if and how Event Medics' clients allowed breaks and individualized issues relation to what types of expenses were incurred by Plaintiff and class members. Also significant is that Defendants claimed financial insolvency. (*Id.*, ¶ 19).

In determining whether a proposed settlement "falls within the range of possible approval," *In re Volkswagen Litigation*, 2016 WL 4010049 at *16 (N.D.Cal. July 26, 2016),

there is "no single formula" to be applied. *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). But the court may presume that the parties' counsel arrived at a reasonable range of settlement by considering the plaintiffs' likelihood of recovery. *Id.* Here, Plaintiffs' damages expert estimated global damages on the non-PAGA claims to be approximately $1,993,281 in aggregate, including overtime wages, double overtime wages, meal violation wages, rest break violation wages, unreimbursed expenses, interest thereon, waiting time penalties, paycheck disclosure violations penalties. (Gutierrez Decl., ¶ 21).

Specifically, if the Parties' Agreement is approved and the anticipated attorney's fees, costs, PAGA allocation, and service payment are awarded, on average, each class member will receive approximately $269.00. (Gutierrez Decl., ¶ 51). Given the risk that continued litigation might not result in any damages being awarded on any claims, or if damages are awarded, collecting any award would potentially be uncollectible, in whole or in part, the Settlement is a fair and reasonable result and represents the most pragmatic outcome. (*Id.* ¶ 51).

A settlement of this value is on par with settlements received in comparable cases. To illustrate, in *Mathein v. Pier 1 Imports (U.S.), Inc.*, No. 116CV00087DADSAB, 2018 WL 1993727, at *10 (E.D. Cal. Apr. 27, 2018), the district court granted final approval of the total proposed settlement for reporting time, split shift, failure to pay minimum wage, and other derivative claims for $3.5 million with an overall average payment for all class members of $236. Likewise, in *Casas v. Victoria's Secret Stores*, No. 2:14-cv-06412-GW (Nov. 21, 2017), the district court granted final approval of a class action settlement involving reporting time, split shift, failure to pay minimum wage, and other derivative claims with an average class member payment of about $300.00.

Given the potential that Defendants would not be in an economic condition to pay a higher settlement amount, the proposed settlement's alignment with these comparable settlements shows that the parties' Agreement falls squarely within the range of reasonableness. (Gutierrez Decl., ¶ 20).

/ / /

/ / /

## V.    THE SETTLEMENT MEETS AND EXCEEDS THE STANDARDS FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive court approval. The court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Court approval is a two-step process in which the Court first determines whether a proposed class settlement deserves preliminary approval and then after notice is given to the Class Members, whether final approval is warranted. *Manual for Complex Litigation*, Fourth, § 21.632 (2004). *See Hanlon*, 150 F.3d at 1019 ("The court ordinarily holds a preliminary hearing to determine whether there is a likelihood it could approve the settlement before conducting a full 'fairness hearing.'").

At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Ultimately, a class action should be approved if it "is fundamentally fair, adequate and reasonable." *Class Plaintiffs*, 955 F.2d at 1276; *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (C.D. Cal. 1982) ("The court's intrusion on what is otherwise a private consensual agreement negotiated between parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."). There is a "strong initial presumption that the compromise is fair and reasonable." *Hanlon*, 150 F.3d at 1019.

Although at this stage of preliminary approval, the Court is not expected to engage

in the more-rigorous analysis that is required for final approval (*see Manual for Complex Litigation*, Fourth, § 22.661 at 438 (2004)), the Court's ultimate fairness determination will include balancing several factors, including some or all of the following:

> [T]he strength of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625.

Not all of the above factors apply to every class action settlement, and one factor alone may prove determinative in finding sufficient grounds for court approval. *Nat'l Rural Telecommunications Cooperative v. Directv, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). District courts have wide discretion in assessing the weight and applicability of each factor. *Id.*

**A. Certification of the Class for Settlement Purposes is Appropriate.**

Before granting preliminary approval of a settlement, the Court must determine that the proposed settlement class is a proper class for settlement purposes. *See generally* Fed. R. Civ. P. 23(e). Courts routinely and properly certify classes for settlement purposes only and the proposed certification of the class is entirely consistent with the applicable authorities. *Amchem Prods. Inc. v.* Winsor, 521 U.S. 591, 619-29 (1997). Certification of a class under Rule 23 requires numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). All four elements are satisfied here.

**1. The settlement class is sufficiently numerous.**

The numerosity requirement mandates that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Ninth Circuit has required at least fifteen members to certify a class, and courts have certified classes smaller than that here. *Harik v. Cal. Teachers Ass'n*, 326 F.3d 1042, 1051 (9th Cir. 2003); *Jensen v. SECORP Indus.*, No.

2:18-CV-02890-RGK-GJS, 2018 WL 5961287, at \*2 (C.D. Cal. Aug. 23, 2018) (certifying class of 31 persons in wage-and-hour case). There are approximately 373 people fitting the settlement class definition herein.  (Gutierrez Decl. at ¶ 25).  This is sufficient to satisfy numerosity and ascertainability requirements.

### 2.  Questions of law or fact are common to the class.

The commonality requirement requires that there be "questions of law or fact to the class." Fed. R. Civ. P. 23(a)(2). "A class has sufficient commonality 'if there are questions of fact and law which are common to the class." *Hanlon*, 150 F.3d at 1019.  The commonality requirement should be "construed permissively," meaning that "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* Here, Plaintiff alleges that all putative class members were subject to the same wage-and-hour policies (*i.e.,* the misclassification of class members as independent contractors) and practices, which resulted in class-wide violations of the Labor Code. (Gutierrez Decl. at ¶ 3).  The commonality requirement is met.

### 3.  The class representative's claims are typical of the class.

The next requirement of Rule 23(a) is typicality, which focuses on the relationship of facts and issues between the class and its representatives. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2010). Here, Plaintiff Munoz represents all putative settlement class members who were currently or formerly working for Defendants during the period of March 1, 2018, to the date this Court preliminary approves the settlement as EMTs and/or Covid Screeners in California whom Defendants classified as independent contractors. Accordingly, Plaintiff's claims are typical of those of the settlement class members.

**4.  The class representative and her counsel will fairly and adequately protect the settlement class members' interests.**

Rule 23(a)(4) requires that the Class Representatives "fairly and adequately protect the interests of the class."  Rule 23(g) requires the Court to consider Class Counsel's prior experience, knowledge and ability to properly represent the Class. Here, Plaintiff Munoz will fairly and adequately protect the interests of the settlement class members. Munoz has no conflicts of interest with the other Settlement Class members and does not seek any different relief than what she seeks on behalf of settlement class members. Additionally, Plaintiff Munoz is committed to the action and has devoted time to assisting counsel with the action, providing documents and reviewing pleadings. (Munoz Decl. at ¶ 6; Gutierrez Decl. ¶ 41; Rosenzweig Decl., ¶¶ 20, 21). Plaintiff Munoz has no interests that are antagonistic to other settlement class members. (Munoz Decl. at ¶ 6; Gutierrez Decl., ¶ 41). Because the named Plaintiff herein will fairly and adequately protect the interests of the Class and because she has no conflicts of interest with the other settlement class members, the Court should appoint Esme Munoz as Class Representative for purposes of the Settlement.

**5.  Class Counsel will fairly and adequately protect Class Members.**

"An order certifying a class action ... must appoint class counsel under Rule 23(g)." *Fed. R. Civ. P.* 23(c)(1)(B).  Courts must consider counsels' work in identifying or investigating claims; counsel's experience in handling the types of claims asserted; counsel's knowledge of applicable law; and the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).  Here, counsel have vast experience handling wage and hour cases, know the applicable law, and are committed to representing the Class. (Gutierrez Decl. at ¶¶ 46 - 50; Declaration of Brent Rosenzweig at ¶¶ 3 - 9 ;  Declaration of Jong Lee at ¶ 4). Plaintiffs' counsel have been appointed class counsel in numerous class action cases. (*Id.*)  Accordingly, the Court should appoint Alejandro P. Gutierrez, Esq. of the Law Offices of Alejandro P Gutierrez Inc and Brent Rosenzweig and Jong Lee of Lee & Rosenzweig to represent the class as Class Counsel for purposes of this Settlement.

/ / /

### 6. Common questions of law and fact predominate.

Rule 23(b)(3) requires the Court to find that: "the questions of law or fact common to class members predominate over any questions affecting only individual members." The predominance "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Here, questions of law and fact predominate, as the individuals comprising the putative settlement class herein all worked for Event Medic as EMTs and/or Covid Screeners in California during the relevant period, and all were allegedly misclassified as independent contractors, were paid under the same compensation plan, receive the same type of wage statements, and worked pursuant to the same non-existent meal and break period policies. (Settlement, § I, ¶¶ 1.4, 1.5).

### 7. A class action is superior to alternative methods.

Rule 23(b)(3) requires the Court to find that: "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Moreover, a class action is superior to individual adjudication because the alternative to a class case in the context of employment disputes is often no case at all because workers fear economic retaliation (termination). *Rutti v. Lojack Corp.*, 2012 WL 3151077, at *6 (C.D. Cal. July 31, 2012). Here, as discussed above, Plaintiff claims that she and the putative class were all subject to the same policies, practices, and procedures of Event Medic. The straightforward relief sought (unpaid wages and penalties calculated based on data readily available to Defendants) and the evidence bearing thereon, demonstrates that a class action resolution of the putative Settlement Class is superior to alternative methods, particularly because the modest *per capita* recovery for each worker is unlikely to be vindicated by individual cases for fear of economic retaliation.

### B. The Court should preliminarily approve the Settlement.

"[Rule 23] requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. To determine whether a settlement agreement meets these standards, the court considers a number of factors, including "the strength of the plaintiff's case, the risk, expense, complexity, and likely duration

of further litigation, the risk of maintaining class action status throughout trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." *Stanton*, 327 F.3d at 959 (internal citations omitted). The settlement may not be a product of collusion among the negotiating parties. *In re Mego Fin, Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)). To the extent these factors are not subsumed by those of Rule 23(e)(2), the court must also consider the factors of said Rule. Fed. R. Civ. P. 23(e)(2) (Adv. Comm. note to 2018 amendment).

"At the preliminary approval stage, some of the factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary." *Litty v. Merrill Lynch & Co.*, 2015 WL 4698475, *8 (C.D. Cal. Apr. 27, 2015). Rather, the court need only decide whether the settlement is potentially fair, *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007), in light of the strong judicial policy in favor of settlement of class actions. *Class Plaintiffs*, 955 F.2d 1276. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 15 F.3d at 1027.

### 1. Extent of discovery and stage of the proceedings.

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." *Acosta*, 243 F.R.D. at 396 (internal quotation marks omitted). Here, as discussed above, the parties have vigorously investigated and contested the claims and defenses. Plaintiff's counsel served written discovery, and Defendants produced employee-specific documents, which Plaintiff's counsel analyzed, including data regarding time-keeping, customer invoices, pay, overtime records, emails, and call logs.    (Gutierrez Decl., ¶ 11). Defendants provided the names and contact information of individuals who were EMTs and/or

Covid-19 Screeners working for Event Medic during the applicable time period. Plaintiff's counsel polled and investigated the work experiences of a significant portion of the individuals identified by Defendants. (Gutierrez Decl, ¶ 11). In addition, Plaintiff's counsel received extensive financial documents relating to Defendants in order to assess the collectability of any judgment in the action.

Each side has a clear idea of the strengths and weaknesses of their respective cases, allowing the Court to conclude that the extent of discovery and the stage of proceedings weigh in favor of preliminary approval.

### 2.  Amount offered in settlement.

In determining whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. *In re Mego*, 213 F.3d at 459.  Here, the gross settlement amount to resolve all claims is $500,000.00. (Settlement, § I, ¶ 1.22).  As noted in the Gutierrez Declaration, Plaintiffs' damages expert's calculation of the maximum value of class claims is approximately $1,993,281, and potential PAGA penalties are estimated to be $1,620,200.00. (*Id.*). Defendants' claimed financial insolvency was factored into the settlement amount.

### 3.  Strengths and risks, expense, complexity, and likely duration of litigation.

Several factors weigh in favor of preliminary approval. First, the outcome of this case, if litigated to a conclusion, is unlikely to result in a more favorable outcome to the affected workers. Factors include Defendants' claimed financial insolvency; the likelihood that Defendants would appeal unfavorable rulings, the fact that litigation is very expensive, especially when the issues implicate expert witnesses with specialized expertise (thus, essentially requiring Plaintiff to hire her own expert witness or be at a severe disadvantage at proving damages at trial). Were this case to continue, the costs of litigation would skyrocket. Further, there is a potential difficulty of maintaining the suit as a class action since Defendants would contest class certification. Finally, there is a risk of incurring the expense of trial without recovery. See *Bellinghausen v. Tractor Supply Company*, 306 F.R.D. 246, (N.D.Cal. 2015) ("in

light of the risks and costs of continued litigation, the immediate rewards to class members are preferable," finding immediate payout to class outweighed the risks and costs of further litigation, where each class member was offered a pro-rata share of the settlement and the average amount of recovery was "just north of $454.48").

Overall, these factors weigh in favor of preliminary approval.

### 4. Experience and views of counsel.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Here, the parties reached settlement after a review of their claims and defenses and after several settlement conferences and discussion. (Gutierrez Decl. at ¶ 18). Plaintiff's Counsel recommends the settlement. (Gutierrez Decl., ¶ 18). Accordingly, this factor weighs in favor of preliminary approval.

### 5. Arms-length negotiations; no collusion between the parties.

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members. . ." *Litty*, 2015 WL 4698475, at *10 (quoting *Staton*, 327 F.3d at 961).

As an initial matter, the settlement negotiations were conducted at arms-length. The parties engaged in substantial discovery and contested litigation. (Gutierrez Decl. at ¶¶ 11, 23, 45). The highly contested nature of the litigation, as well as the parties' participation in several settlement conferences with the assistance of Magistrate Judge Hon. Maria A. Audero, Magistrate Judge Hon. Steven Kim, and Magistrate Judge Hon. Karen E. Scott, is strongly indicative that the settlement process was <u>not</u> collusive.

The financial terms of the Settlement also do not reflect any collusion between the parties. Class Counsel's requested fees (one-third of the Gross Settlement Amount) is "within the range of awards in this circuit." *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at

*4 (N.D. Cal. Sept. 20, 2018) (Orrick, J.) (collecting cases awarding one-third of the common fund); *see also Weeks v. Google LLC,* 2019 WL 8135563, at *3 (N.D. Cal. Dec. 13, 2019) (awarding 30% in case involving UCL and CLRA claims (citing *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002)); *In re LenovoAdware Litig.,* 2019 WL 1791420, at * 8 (N.D. Cal. Apr. 24, 2019) (awarding 30%); *Hendricks v. Starkist Co.,* 2016 WL 5462423, at *12 (N.D. Cal. Sept. 29, 2016) (finding award of 30% reasonable in consumer fraud case), *aff'd sub nom., Hendricks v. Ference,* 754 Fed. App'x 510 (9th Cir. 2018))).

Plaintiff Munoz seeks a modest service enhancement of $15,000.00 for her years of service to the case, the risks she faced, including assuming the risk of a judgment against her and personal liability for an award of costs, and her contributions to the settlement, including by agreeing to dismiss individual claims without additional consideration in order to ensure finality to the litigation so that a class wide settlement agreement could be reached. Defendants agree not to oppose any application for an incentive award of $15,000.00. The Settlement is not conditioned on the payment of a $15,000.00 incentive award to Plaintiff. See *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases [] and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and sometimes, to recognized their willingness to act as a private attorney general.")

Plaintiff provided outstanding service to Class Counsel. (Rosenzweig Decl., ¶¶ 20, 21; Munoz Decl. at ¶¶ 3 - 5). She was instrumental in and part of, the settlement negotiations. The requested service award does not evidence collusion between the parties sufficient to deny preliminary approval.

Any amounts not awarded to counsel for their fees (or to the class representative as a service payment) are non-reversionary and will, thus, increase the net settlement amount distributed to class members. (Settlement at ¶ 3.1).

/ / /

REVISED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

### 6.  The Settlement treats all class members equitably.

The Settlement does not unfairly grant preferential treatment to any Class Member. The parties have also carefully constructed a formula for payments to Settlement Class members to ensure an equitable distribution of the settlement funds based on objective criteria, including, without limitation, the number of workweeks they worked during the relevant time period. (Settlement, ¶ 3.2.4).

### 7.  Other factors.

In addition to the factors discussed above, the Court may consider the risk of maintaining class action status throughout the trial, the presence of a governmental participant, and the reaction of the class members to the proposed settlement. *Staton*, 327 F.3d at 959 (internal citations omitted). At this stage, the Court cannot fully analyze the remaining factors. For example, there is no governmental "participant" in this action.  Additionally, the Settlement Class members have yet to receive notice of the Settlement and have not had an opportunity to comment or object to its terms.

On balance, the factors support preliminary approval of the Settlement. The Settlement is potentially fair, adequate, and reasonable.

### C.  The proposed Class Notice should be approved.

Pursuant to Rule 23(e), district courts must "direct notice in a reasonable manner to all class members who would be bound" by the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(1)(B).  Regarding Rule 23(b)(3) classes, the following subsection provides:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule

1    23(c)(3). *Fed. R. Civ. P.* 23(c)(2)(B) (reformatted for style herein).

2    As such, the rule requires that "[i]ndividual notice must be sent to all class members

3    whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle*

4    *& Jacquelin*, 417 U.S. 156, 173 (1974). In addition, due process mandates that the "notice must

5    be 'reasonably calculated, under all the circumstances, to apprise interested parties of the

6    pendency of the action and afford them an opportunity to present their objections.'" *See id.* at

7    174 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Class

8    notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to

9    alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*

10   *Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

11   In this case, notice packets will be mailed to all class members at their last known address

12   on file with Defendant. (Settlement at § 8.4). The notice packets will disclose the amount of the

13   Class Member's estimated settlement award and will also include instructions for requesting

14   exclusion from the class or objecting to the terms of the settlement. (*See* Settlement, and Ex.

15   "1" thereto).

16   The proposed class notice is the "best notice that is practicable under the circumstances,

17   including individual notice to all members who can be identified through reasonable effort."

18   *See* Fed. R. Civ. P. 23(c)(2)(B).  The notice includes all of the information required by Rule

19   23(c)(2)(B). For these reasons, Plaintiff requests the Court to approve the proposed notice.

20   **D. The Court Should Appoint CPT Group as Claims Administrator**

21   The parties propose that, subject to the Court's approval, CPT Group administer the

22   Settlement.    CPT Group has served as the Claims Administrator for a number of Class

23   Counsel's other class action settlements. (Gutierrez Decl. ¶). CPT Group performed the

24   administration duties professionally and efficiently. (*Id.*).

25   **E. Plaintiff requests approval of the PAGA settlement.**

26   "An employee bringing a PAGA action does so as the proxy or agent of the state's labor

27   law enforcement agencies, ... who are the real parties in interest." *Sakkab v. Luxottica Retail N.*

28   *Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (internal citations omitted).  Because a PAGA

action is brought as a proxy for law enforcement agencies, "[t]here is no requirement that the Court certify a PAGA claim for representative treatment like in Rule 23 ...." *Villalobos v. Calandri Sonrise Farm LP*, 2015 WL 12732709, at *5 (C.D. Cal. July 22, 2015). Nevertheless, the "court shall review and approve any settlement of any civil action filed" pursuant to PAGA. Cal. Lab. Code § 2699(l)(2). "The proposed settlement shall be submitted to the agency at the same time that it is submitted to the court." *Id.* Courts in this Circuit have applied several of the factors in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), to evaluate a PAGA settlement. *See O'Connor v. Uber Techs.*, 201 F. Supp. 3d. 1110, 1134 (N.D. Cal. 2016).

The PAGA settlement meets the requirements for approval. First, Plaintiff has submitted the proposed settlement to the LWDA. (Gutierrez Decl. at ¶ 6). Second, as discussed hereinabove, the Settlement meets the applicable *Hanlon* factors. With respect to the PAGA portion of the Settlement only, the only factor that needs further elaboration is the "governmental participant" factor and the amount offered in settlement. The only governmental participant here is the LWDA. At the commencement of this action, Plaintiff gave written notice of her intent to pursue civil penalties against Defendants. (Gutierrez Decl. at ¶ 6). After the case resolved, Plaintiff provided a copy of the Settlement to the LWDA, informing the agency in the same transaction that the Court would hold a preliminary approval hearing, and LWDA would be notified of the hearing date in advance of the hearing. (*Id.*). The LWDA has not yet participated in the case. If the LWDA eventually chooses to participate in the Settlement, the Court can reweigh this *Hanlon* factor. As of now, however, the lack of a governmental participant favors approval of the PAGA settlement.

Second, the amount offered in the Settlement of the PAGA claims is reasonable. The "theoretical" maximum value of the PAGA portion of this case is approximately $1,620,200.00 (Gutierrez Decl., ¶ 40). The parties have allocated toward PAGA penalties $40,000.00 out of the $500,000.00 settlement. Although the allocation of $40,000.00 out of a $500,000.00 gross settlement amount may appear small, courts have routinely approved PAGA settlements with much smaller allocations. This is because the purpose of PAGA is to provide a procedure for private enforcement of the labor laws, not to receive damages or restitution. *See Brown v.*

*Ralph's Grocery Co.*, 197 Cal. App. 4th 489, 501 (2011) ("The purpose of the PAGA is not to recover damages or restitution."); *Cunningham v. Leslie's Poolmart, Inc.*, No. CV 13-2122 CAS CWX, 2013 WL 3233211, at *6 (C.D. Cal. June 25, 2013) ("The purpose is not to collect damages on behalf of other employees or provide restitution to victims of Labor Code violations.").

Indeed, a court does not abuse its discretion by approving a settlement that allocates ZERO of the settlement recovery to PAGA claims. *Nordstrom Commission Cases*, 186 Cal. App. 4th 576, 589 (2010). Moreover, while the "theoretical" maximum PAGA exposure is $1,620,200.00, there is a considerable risk that no penalties at all might be awarded. Were this case to proceed, Plaintiff would additionally expect Defendants to bring challenges as to manageability, willfulness, and relevant time period. Under such circumstances, the allocation for PAGA penalties is a fair and reasonable compromise of the PAGA penalties.[1]

Here, the LWDA was given the opportunity to investigate this matter after being given notice but declined to do so. As detailed above, there were many factors that came into play when deciding to enter into the settlement. The Settlement provides for the release of only PAGA claims by those who receive a portion of the PAGA allocation. Accordingly, this is a fair and sufficient settlement and allocation.

**F. Proposed schedule for remaining procedures.**

Plaintiffs propose the following schedule for final approval, assuming preliminary approval is granted on July 16, 2024.

---

[1] Many trial courts have approved PAGA payments that are less than one percent of the total settlement value. *See, e.g., Hopson v. Hanesbrands Inc*., No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009) (approving a PAGA settlement of 0.003% or $1,500 of the total settlement as it was in good faith); *Franco v. Rut Food Prods., Inc*., No. l:10-cv-02354-SKO, 2012 WL 5941801, at *14 (E.D. Cal. Nov. 27, 2012) (approving PAGA penalties of $10,000 as part of $2.5 million settlement, 0.004%); *Garcia v. Gordon Trucking*, No. 1:10-CV-0324-AWI-SKO, 2012 WL 5364575, at *3 (E.D. Cal. Oct. 31, 2012) (approving PAGA settlement payment of $10,000 out of the $3.7 million settlement, 0.0027%).

| Preliminary Approval Hearing / Order | July 16, 2024 |
|---|---|
| Defendants to provide Class contact information to CPT Group (7 calendar days from entry of order) – Settlement at ¶ 4.2. | July 23, 2024 |
| CPT Group to mail Notice packets (14 calendar days from receipt of information) – Settlement at ¶ 8.4.2. | August 6, 2024 |
| Settlement Class members to possibly opt-out or object (45 calendar days from mailing or 14 days from any re-mailing; assume 59 days maximum) – Settlement at ¶¶ 8.4.4; 8.5.1. | September 20, 2024 October 4, 2024 |
| Motion for final approval due | October 7, 2024 |
| FINAL APPROVAL HEARING (proposed) | November 13, 2024 |

## VI.    CONCLUSION

For the reasons stated hereinabove, Plaintiff, on behalf of herself and the within-described class of EMTs/Covid Screeners, respectfully requests the Court to grant this motion for preliminary approval of class action settlement.

Dated:   July 2, 2024

By: _____
Alejandro P. Gutierrez
Attorneys for Plaintiff ESME MUNOZ and the Settlement Class

**REVISED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF VENTURA**

I am employed in the County of Ventura, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 5450 Telegraph Road, Suite 200, Ventura, CA 93003.

On July 2, 2024 I caused to be served a true and correct copy of the foregoing document described as **REVISED NOTICE OF MOTION AND REVISED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; REVISED DECLARATION OF ALEJANDRO P. GUTIERREZ; REVISED PROPOSED ORDER** on the interested parties in this action as follows:

| SEE ATTACHED SERVICE LIST |
|---|

[X ] **BY MAIL:** By placing a true copy thereof enclosed in a sealed envelope addressed to the addressee(s) listed above. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same date with postage thereon fully prepaid at Ventura, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ X ] **BY E-MAIL:** By sending a true copy thereof by e-mail transmission from Coleen@apgutierrezlaw.com to the e-mail addressee(s) listed below. The transmission was reported as complete and without error.

[ ] **BY PERSONAL SERVICE:** By placing a true copy thereof enclosed in a sealed envelope. I caused such envelope to be delivered by hand to the offices of the addressee(s) listed above.

*(Federal)* I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **July 2, 2024** at Santa Paula, California.

*Coleen De Leon*
_____
Coleen De Leon

## SERVICE LIST

| Counsel of Record | Party |
|---|---|
| KAUFMAN DOLOWICH & VOLUCK LLP<br>Allyson K. Thompson<br>athompson@kdvlaw.com<br>Amir Benakote<br>abenakote@kdvlaw.com<br>21515 Hawthorne Blvd., Suite 450<br>Torrance, CA 90503-6531 | *Attorneys for Defendant*<br>EVENT MEDIC NY INC |
| SEYFARTH SHAW LLP<br>Elizabeth M. Levy<br>elevy@seyfarth.com<br>Michael A. Signall<br>msignall@seyfarth.com<br>Laura Wilson Shelby<br>lshelby@seyfarth.com<br>2029 Century Park East, Suite 3500<br>Los Angeles, CA 90067-3021 | *Attorneys for Third Party Defendant*<br>CAPRI HOLDINGS LIMITED |

**REVISED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**